# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IBRAHIM I., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-05983 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ANDREW MARSHALL SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ibrahim I. seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Plaintiff contends that the Administrative Law Judge ("ALJ") who decided his claim failed to develop fully the factual record and erroneously determined that his major depressive disorder was not a medically determinable impairment. For the reasons that follow, this Court agrees that the ALJ erred. Thus, the ALJ's decision is vacated and the case is remanded for further proceedings.

## BACKGROUND

Plaintiff filed for disability benefits on October 7, 2013. (Admin. R. ("A.R.") at 21, Dkt. No. 6-1.) He became unable to work on September 1, 2008, and he last met the insured status requirements of the Social Security Act on December 31, 2012. (*Id.* at 23.) Before his disability rendered him unable to work, Plaintiff was employed from 2000 to 2005 as a laborer at a liquor store. (*Id.* at 27–29, 47.) Then, in 2007 and 2008, he drove a taxi part-time. (*Id.* at 48.)

Sometime in 1995 or 1996, Plaintiff experienced a work-related injury to his right arm while employed as an assembly line worker. (*Id.* at 25–26, 50, 220.) The injury caused him to

suffer pain and numbness in his right arm and prevented him from being able to lift or handle heavy objects with that arm. (*Id.* at 25.) Despite his injury, Plaintiff had to return to work after just a few weeks. (*Id.* at 51.) Yet the heavy work he was required to do at his job further aggravated his arm injury and also caused him back pain. (*Id.* at 52.) Ultimately, Plaintiff was terminated from his assembly line job due to performance issues. (*Id.*)

At his job at the liquor store, Plaintiff performed a variety of tasks, including cleaning and stocking. (*Id.* at 47.) In addition, that job required him to lift as much as 75 pounds. (*Id.* at 27, 47–48.) Plaintiff testified that although he continued to have pain in his right arm, he felt he had no choice but to engage in such heavy lifting because he needed the work. (*Id.* at 56.) After becoming very ill, Plaintiff was terminated from his job at the liquor store. (*Id.* at 56–57.) While he later attempted to drive a taxi, he found it difficult to sit and drive for long periods. (*Id.* at 58.)

Along with his right arm injury, Plaintiff testified that he suffers from depression. (*Id.* at 60.) He first began suffering from depression around 2001 after his father died. (*Id.*) Plaintiff stated that because of his depression, he lacked motivation to do anything and simply wanted to be left alone. (*Id.* at 61.) He testified that he now spends most of his time at home lying in bed in his darkened bedroom. (*Id.* at 59.) While Plaintiff claimed that he had visited doctors and hospitals for his depression, he was unable to produce any records of such treatment from before his date last insured, December 31, 2012. (*Id.* at 41, 61.)

Plaintiff's claim for disability benefits was initially denied on March 19, 2014 and, upon request for reconsideration, denied again on December 18, 2014. (*Id.* at 21.) He then requested and received a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on November 30, 2015. (*Id.*) At the hearing, Plaintiff was represented by a non-attorney

2

representative. (*Id.*) In addition to Plaintiff's testimony, the ALJ also heard testimony from an impartial medical expert and an impartial vocational expert. (*Id.*)

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled prior to his date last insured, December 31, 2012. (*Id.* at 21–30.) As an initial matter, the ALJ stated that he would not consider the effect Plaintiff's depression had on his ability to work because it was not a medically determinable impairment. (*Id.* at 23.) Although the ALJ acknowledged that Plaintiff had been diagnosed with major depressive disorder, that diagnosis was made only after Plaintiff's date last insured. (*Id.*) Moreover, Plaintiff was unable to produce any medical records concerning his mental health treatment from before the date last insured. Consequently, the ALJ concluded that Plaintiff's depression was not a medically determinable impairment and declined to give any weight to any opinion evidence concerning the effect Plaintiff's depression had on his residual functional capacity ("RFC"). (*Id.* at 24.)

On the other hand, the ALJ did conclude that Plaintiff suffered a severe impairment to his right upper extremity prior to the date last insured, and that the impairment resulted in a significant limitation in his ability to perform basic work-related activities for a period of twelve months or longer. (*Id.* at 23.) Nonetheless, the ALJ found that the severity of Plaintiff's right upper extremity impairment did not equal the severity of the relevant listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, because a consultative physical examination revealed that Plaintiff could zip and tie shoelaces without difficulty, make a fist, and oppose his fingers. (*Id.* at 24.)

The ALJ then concluded that through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). (*Id.* at 24.) While he found that Plaintiff's medically determinable impairment could reasonably be expected to cause Plaintiff to

3

experience pain, numbness, and difficulty lifting, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*Id.* at 25.) Further, the ALJ noted that after Plaintiff initially injured himself, he returned to work and in fact worked several years at the liquor store in a job that required him to lift as much as 75 pounds. (*Id.* at 27.) And the objective medical evidence did not show that Plaintiff's condition had worsened since then. (*Id.*)

Finally, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could have performed through his date last insured. (*Id.* at 29.) The ALJ cited the testimony of the vocational expert, who stated that Plaintiff would be able to perform occupations such as cleaner, cafeteria attendant, or hand packager. (*Id.* 29–30.) Thus, because Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was "not disabled." *Id.* at 30.

## DISCUSSION

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the

following order: (1) whether the claimant is not currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders him unable to perform his past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make him unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, the ALJ found at step five that Plaintiff was not disabled because Plaintiff had the RFC to adjust to other work. His RFC assessment was based only on Plaintiff's right arm injury. However, the ALJ declined to include Plaintiff's major depressive disorder in the sequential evaluation process because he found, at step two, that Plaintiff's depression was not a medically determinable impairment. According to Plaintiff, the ALJ made that determination without fully developing the record. Had the ALJ fulfilled his duty to build a complete record, he would have accounted for Plaintiff's depression in the evaluation. And Plaintiff argues that if the limiting effects of his depression had been considered in conjunction with his right arm injury, he would have been found disabled.

### I. Waiver of Counsel

As an initial matter, Plaintiff contends that the ALJ did not obtain a valid waiver of counsel when he allowed Plaintiff to proceed at the hearing with a non-attorney representative. "A claimant has a statutory right to counsel at a disability hearing." *Binion v. Shalala*, 13 F.3d 243,

245 (7th Cir. 1994) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). However, a claimant may waive his right to counsel when he is properly informed of the right. *Id.* For a waiver of counsel to be valid, the ALJ must explain "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.*

Whether the ALJ obtained a valid waiver of counsel impacts a reviewing court's evaluation of whether the ALJ fulfilled his duty to develop the factual record. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). When a claimant proceeds without counsel, that duty is enhanced. *Id.* In such circumstances, the ALJ must "scrupulously and conscientiously . . . probe into, inquire of and explore for all the relevant facts," regardless of whether the waiver of counsel was valid. *Binion*, 13 F.3d at 245 (internal quotation marks omitted). But the failure to obtain a valid waiver of counsel impacts the placement of the burden of showing that the ALJ adequately developed the record. *See id.* "If the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record." *Skinner*, 478 F.3d at 842. Otherwise, the burden is with the claimant. *See Binion*, 13 F.3d at 245.

Here, Plaintiff claims that the ALJ failed to obtain a valid waiver of counsel because he did not orally advise Plaintiff of his right to counsel at the hearing. But the Commissioner points to various documents Plaintiff received prior to his hearing that adequately informed Plaintiff of his right to counsel. In particular, the Commissioner points to a pamphlet entitled "Your Right to Representation" that advised Plaintiff of his right to an attorney, counsel's role in the hearing, and available fee arrangements, as required under Seventh Circuit precedent. The Seventh Circuit has

6

held that this pamphlet is sufficient to effect a valid waiver of counsel, even when the ALJ does not repeat that information at the hearing. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) ("[S]o long as it contains the required information, written notice adequately apprises a claimant of his right to counsel."). For that reason, the Court finds that Plaintiff validly waived his right to an attorney.

## II. Full and Fair Development of the Record

The Court next considers whether Plaintiff met his burden of demonstrating that the ALJ failed to develop the record fully and fairly. While a claimant who proceeds without an attorney "must furnish some medical evidence to support [his] claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098. Nonetheless, courts normally "uphold[] the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Id.* Thus, "a significant omission is usually required" for a court to find that the ALJ failed to assist a *pro se* claimant in developing the record. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). "And an omission is significant only if it is prejudicial." *Nelms*, 553 F.3d at 1098. A claimant may not demonstrate prejudice through conjecture or speculation but instead "must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.*

Here, Plaintiff contends that the ALJ failed to develop the record adequately because he did not make any effort to determine whether Plaintiff's depression existed before he actually sought treatment. The Court agrees. To understand why the record was not fully and fairly developed, the Court must first address Plaintiff's claim that the ALJ erred in concluding that

7

Plaintiff's depression was not a medically determinable impairment—a point Plaintiff argued separately.

A claimant has a medically determinable physical or mental impairment when he has an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 (2016). It is beyond question that Plaintiff's depression was a medically determinable impairment. Plaintiff's primary care provider had diagnosed him with severe major depressive disorder and prescribed him anti-depression medication in 2013. (*See* A.R. 381–83; 398.) Indeed, the Commissioner does not contend that the diagnosis did not constitute a medically determinable impairment. Rather, he argues that the ALJ accurately found that depression was not a medically determinable impairment prior to Plaintiff's date last insured, December 31, 2012, because Plaintiff had not received a diagnosis or treatment for depression before that date. This argument is flawed, however, because the lack of a diagnosis or treatment for a medically determinable impairment prior to the date last insured does not absolve the ALJ of the responsibility to determine whether that impairment nonetheless arose at an earlier time.

The ALJ provided no support for his conclusion that Plaintiff's depression had to be diagnosed prior to his date last insured for it to be a medically determinable impairment. To the contrary, once an ALJ determines the existence of a medically determinable impairment at the time of a claimant's application, he must proceed to determine whether that impairment or combination of impairments renders the claimant disabled. Only after he makes that determination does the ALJ determine the onset date of the disability by applying SSR 83-20.[1] *Kenefick v.*

---

[1] SSR 83-20 was rescinded on October 2, 2018, after the ALJ rendered his decision in this case. It was replaced by SSR 18-1p and SSR 18-2p. Relevant here, SSR 18-1p states that a reviewing federal court will review the Commissioner's decisions "using the rules that were in effect at the time [he] issued the decisions."

8

*Astrue*, 535 F. Supp. 2d 898, 907 (N.D. Ill. 2008) ("SSR 83-20 comes into play once an ALJ determines a claimant has a disability."); *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1040 (N.D. Ill. 2007) ("SSR 83-20 describes the policy and relevant evidence to be considered when establishing the onset date of disability." (internal quotation marks omitted)). "SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time." *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004).

What appears to have happened here is that the ALJ excluded depression at step two of the sequential analysis because he concluded that Plaintiff would not be able to establish that his depression had an onset date preceding the date last insured. However, the ALJ made no mention of SSR 83-20 whatsoever. Under SSR 83-20, the ALJ must consider three factors when determining the onset date of disabilities of nontraumatic origin: "(1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005). Instead, the ALJ appears to have decided that the lack of a diagnosis from before the date last insured settled the matter. His key error was conflating Plaintiff's diagnosis date with the onset date. *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987) ("[T]he critical date is the date of *onset* of disability, *not* the date of diagnosis." (internal quotation marks omitted)); *Pierce v. Astrue*, 907 F. Supp. 2d 941, 951 (N.D. Ill. 2012) ("SSR 83-20 prevents an ALJ from relying on the first date of diagnosis solely because an earlier diagnosis date was not available."). That led the ALJ not to consider whether Plaintiff's depression had an onset date earlier than his diagnosis date.

SSR 83-20 does state that "medical evidence is 'the primary element in the onset determination,' and the date chosen 'can never be inconsistent with the medical evidence of

record.'" *Briscoe*, 425 F.3d at 353 (quoting SSR 83-20). And the ALJ did note that Plaintiff's file contained no mental health records prior to the date last insured. Yet "the lack of medical records that support an earlier date should not excuse the ALJ from applying the SSR 83-20 analysis." *Lewis*, 518 F. Supp. 2d at 1041; *see also Taylor v. Massanari*, No. 00 C 5643, 2001 WL 1035286, at *7 (N.D. Ill. Sept. 7, 2001) ("SSR 83-20 specifically contemplates the possibility of determining an onset date absent corroborating medical documentation."). Indeed, SSR 83-20 recognizes that in some circumstances "adequate medical records are not available." SSR 83-20. "In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* Here, there were medical records from after Plaintiff's date last insured documenting his longstanding depression (A.R. at 107, 398–411, 442-43), but the ALJ disregarded them because of his erroneous conclusion that depression was not a medically determinable impairment. Furthermore, SSR 83-20 recognizes that in some cases the onset date will have to be inferred. It recommends first that the ALJ call on the services of a medical advisor. But the ALJ dismissed a mental health medical expert due to Plaintiff's lack of mental health treatment records pre-dating the date last insured. SSR 83-20 also anticipates that on some occasions an inference cannot be made based on "the evidence in file and additional relevant medical evidence [will not be] available." SSR 83-20. In such circumstances, "[i]nformation may be obtainable from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* Yet the ALJ did not attempt to consult any such information before determining that Plaintiff's depression did not arise before his date last insured.

In short, the ALJ's erroneous conclusion that Plaintiff's depression was not a medically determinable impairment was based on two errors. First, the ALJ effectively determined the onset date in his step two analysis of whether Plaintiff's depression was a severe medically determinable impairment even though the onset date is only to be determined after a finding of disability. More fundamentally, the ALJ's failure to apply SSR 83-20's analysis led him to determine that Plaintiff's depression was not a medically determinable impairment because it did not arise prior to his date last insured. Because of these two errors, the ALJ did not attempt to further develop the factual record as it related to Plaintiff's depression. Indeed, he outright dismissed evidence concerning Plaintiff's depression because he deemed it irrelevant. But to the extent he had doubts about the onset date of Plaintiff's depression, the ALJ should have supplemented the record in accordance with SSR 83-20. For example, the ALJ could have called on a medical advisor or Plaintiff's treating psychiatrist to opine as to the onset date.

Plaintiff was prejudiced by the ALJ's failure to develop the record fully and fairly with respect to Plaintiff's depression. At step five, the ALJ's judgment that Plaintiff could transition to other work in the economy was based on the testimony of the vocational expert. But during the hearing, the ALJ asked the vocational expert whether there would be jobs available for a hypothetical individual who had Plaintiff's physical restrictions and also had mental limitations. (A.R. at 75.) The vocational expert stated that there would be no available jobs for such a person. (*Id.*) Thus, including depression among Plaintiff's limitations could have caused the ALJ to find Plaintiff disabled at step five.

Because the ALJ's failure to develop the record as to Plaintiff's depression was a significant and prejudicial omission, the ALJ's decision must be vacated and the case remanded for further administrative proceedings with instructions to develop the record properly as to

Plaintiff's depression and apply the appropriate analysis in determining the onset date.[2] The Court expresses no judgment as to whether Plaintiff's depression was in fact a severe medically determinable impairment or otherwise renders Plaintiff disabled.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 9) is granted and the Commissioner's motion for summary judgment (Dkt. No. 17) is denied. The case is remanded for further administrative proceedings consistent with this opinion.

ENTERED:

Dated: April 10, 2020

_____
Andrea R. Wood
United States District Judge

---

[2] Because SSR 83-20 was rescinded, on remand, SSR 18-1p will apply. SSR 18-1p ("If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in appropriate cases when we make a decision after the court's remand.").